IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ROBERT CHATELAIN and
JANET CHATELAIN,

    Plaintiffs,

v.

COUNTRY MUTUAL
INSURANCE CO.

    Defendant.

No. 3:15-cv-02013-MO

OPINION AND ORDER

**MOSMAN, J.,**

This matter comes before me on Defendant Country Mutual Insurance Co.'s ("Country Mutual") Renewed Motion for Judgment as a Matter of Law, or in the Alternative, Motion for New Trial [174]. For the reasons below, I DENY Country Mutual's Motions.

## BACKGROUND

Plaintiffs Robert and Janet Chatelain own a dairy farm in Tillamook County. In 2009, they decided to retire and began leasing the farm to the Brauns. At the time of the lease, the dairy farm had 230 milking cows, 166 heifers, two bulls, and all equipment necessary to operate a dairy. In November 2013, the Brauns violated their lease agreement, and in December 2013, the Chatelains moved back to the dairy farm. On December 20, 2013, their first time milking the cows since moving back to the farm, the Chatelains noticed that 113 milking cows and 100 heifers were missing from the livestock. They also noticed that several pieces of equipment were

1 – OPINION AND ORDER

missing and that substantial damage had been caused to the farm. The Chatelains notified the sheriff, sued the Brauns, and submitted an insurance claim to Country Mutual. Country Mutual denied the claim, and the Chatelains brought suit for breach of contract and breach of the implied duty of good faith and fair dealing.

After a four-day jury trial, the jury found for the Chatelains on both counts and awarded them $793,375 in damages from stolen personal property, stolen livestock, loss of milk production, damages to structures, and vandalism. [152]. Country Mutual now renews its motion for judgment as a matter of law, made at the close of evidence during trial. Country Mutual argues: (1) the Chatelains did not prove an "occurrence" of theft took place during the relevant Policy period; (2) the Chatelains did not prove the cows were stolen; (3) the Policy does not cover lost milk production; and (4) the damages awarded for lost milk production were excessive. [174]. Country Mutual also moves for a new trial, arguing: (1) the Chatelains showed the jury a demonstrative chart that was inaccurate; and (2) the Chatelains did not show the damages to the main house were the result of vandalism. [174]. Alternatively, Country Mutual moves for remittitur. [174].

## LEGAL STANDARD

"In considering a Rule 50(b)(3) motion for judgment as a matter of law, the district court must uphold the jury's award if there was any 'legally sufficient basis' to support it." *Experience Hendrix L.L.C. v. Hendrixlicensing.com Ltd*, 762 F.3d 829, 842 (9th Cir. 2014) (quoting *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002)). "In making that determination, the district court considers all of the evidence in the record, drawing all reasonable inferences in favor of the nonmoving party . . . ; the court may not make any credibility determinations or reweigh the evidence." *Id.*

"The court may, on motion, grant a new trial . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). "Historically recognized grounds include, but are not limited to, claims 'that the verdict is against the weight of the evidence, that the damages are excessive, or that, for other reasons, the trial was not fair to the party moving.'" *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251 (1940)). "[T]he district court, in considering a Rule 59 motion for new trial, is not required to view the trial evidence in the light most favorable to the verdict. Instead, the district court can weigh the evidence and assess the credibility of the witnesses." *Experience Hendrix*, 762 F.3d at 842.

"When the court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, . . . [i]t may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting a remittitur." *Fenner v. Dependable Trucking Co.*, 716 F.2d 598, 603 (9th Cir. 1983).

## DISCUSSION

### I. Renewed motion for judgment as a matter of law

#### A. *Whether the Chatelains put forth sufficient evidence to prove an "occurrence" of theft took place under the Policy.*

I denied Country Mutual's motion for judgment as a matter of law on whether the Chatelains put forth sufficient evidence to prove an occurrence of theft at the close of evidence. Transcript [162] at 747–53. Country Mutual argues the Chatelains put forth insufficient evidence to show that a covered loss resulted from "an occurrence" during the relevant 12-month policy period at issue here, which began February 1, 2013. Motion [174] at 5 (quoting Thenell Decl. [175], Ex. 6 at 10). In particular, Country Mutual argues there was no evidence presented at trial that the theft of two tractors or a theft of cows "occurred" during the policy period.

3 – OPINION AND ORDER

The Policy defines an "occurrence" as "the happening of an event, or series of events closely related in time and nature that give rise to a loss." Thenell Decl. [175], Ex. 6 at 10; *see Interstate Fire & Cas. Co. v. Archdiocese of Portland in Or.*, 864 P.2d 346 (Or. 1993) ("[T]he number of covered 'occurrences' . . . begins with an examination of the words of the applicable provisions in the insurance policy, because the court's task in interpreting an insurance policy is to determine the intention of the parties. The intention of the parties is determined based on the terms and conditions of the policy.") (internal citations omitted). The Chatelains put forth evidence at trial that their losses resulted from one event or a series of closely-related events during the policy period: the Brauns taking their livestock and equipment in December 2013. Specifically, the Chatelains put forth evidence that the Brauns took the cows and tractors when they vacated the property in December 2013, including evidence refuting Country Mutual's argument that the Brauns sold the tractors in 2010. Langfitt Decl. [180], Trial Transcript at 9–11, 23–24, 33–34, 76. This evidence is sufficient for the jury to conclude that the cows and tractors were stolen during the relevant policy period of February 2013–2014. I therefore DENY Country Mutual's renewed Motion for judgment as a matter of law on this issue.

**B. *Whether the Chatelains put forth sufficient evidence to prove a theft of cows***

I denied Country Mutual's motion for judgment as a matter of law on whether the Chatelains put forth sufficient evidence to prove a theft of cows occurred at the close of evidence. Transcript [162] at 747–53. Country Mutual argues the Chatelains showed that there were cows missing at the end of the Brauns' lease, but did not show that the cows were stolen or where the cows ended up. Motion [174] at 6–9. The Chatelains respond that they presented the following evidence that a theft "likely" occurred, as required under the Policy here: (1) Mr. Chatelain's testimony that he saw roughly the correct number of cows on December 19, 2013, but that 113 milking cows and 100 heifers were missing the next morning; (2) Mrs. Chatelain's

4 – OPINION AND ORDER

corroborating testimony; (3) Jeff Green's testimony that he saw the Brauns' cattle trailers near their second farm; (4) Country Mutual's denial letter stating Mr. Braun was in possession of the "Missing Tools/Equipment/Cattle"; and (5) Country Mutual insurance adjuster's admission that understood the cows belonged to the Chatelains and that a third party sold their property. Response [179] at 7–8; Langfitt Decl. [180], Ex. 1, Trial Transcript at 10, 37–40, 59–60, 62–63; Ex. 4 at 1.

The Chatelains presented evidence sufficient for a jury to conclude that a theft occurred. First, the Policy's definition of "theft" is relatively broad: it defines "theft" as "includ[ing] attempted theft and loss of property from a known place when it is likely that the property has been stolen." Thenell Decl. [175], Ex. 6 at 39. The Chatelains presented evidence that the cows (property) were taken from their farm (a known place) by the Brauns, who did not own the cows (and thus it was likely that the property was stolen). Contrary to Country Mutual's assertions, the Policy does not require the Chatelains to show what happened to the cattle, only that it was likely they were stolen. Second, the Chatelains' Farm Lease with the Brauns stated that the herd could not be diminished below 230 cows and 166 heifers. Thenell Decl. [175], Ex. 3 at 2, 5. There was evidence presented at trial that 113 cows and 100 heifers were missing from the minimum herd number stated in the Farm Lease on December 20, 2013 and that the Brauns took the cattle. That evidence was sufficient for the jury to conclude that the Brauns' actions constituted theft. *See* Langfitt Decl. [180], Ex. 1, Trial Transcript at 10, 37–40, 59–60, 62–63; Ex. 4 at 1. I DENY Country Mutual's renewed Motion on this issue.

### C. *Whether the Policy covers lost milk production*

I denied Country Mutual's motion for judgment as a matter of law on lost milk production at the close of evidence. Transcript [162] at 747–53. Country Mutual argues the Policy does not cover lost milk production as a direct loss or a consequential economic loss

5 – OPINION AND ORDER

under the Policy's coverage for business interruption. Motion [174] at 8–9. The Chatelains argue lost milk production qualifies as a direct loss because is a "natural and direct" consequence of the cattle theft. Response [179] at 9 (citing *Brown v. Farmers Mut. Ins. Co. of Nebraska*, 468 NW2d, 105, 115–16 (holding farmers could recover the value of lost wool from stolen sheep)).[1]

In *Gowans v. Northwest Pacific Indemnity Co.*, the Oregon Supreme Court concluded that the payment of reward money for the return of stolen jewelry was covered by a "loss by theft" provision in an insurance policy. *Gowans v. Nw. Pac. Indem. Co.*, 489 P.2d 947, 948 (Or. 1971). The Court first concluded:

> In our view, the term 'loss by theft' is legally ambiguous in that, depending upon the intent of the parties in the use of that term, it can be given either a narrow meaning, so as to be limited to the value of the property stolen, or a broad meaning, so as to extend to all loss resulting from theft of the insured property.
>
> In the absence of any evidence to the contrary, we are constrained to hold that at least a reasonable doubt exists whether by the use of that term the parties intended to adopt such a narrow and limited meaning, rather than such a broad and liberal meaning, and we therefore must resolve that doubt in favor of the insured.

*See id.* at 948. Next, the Court decided the payment of the reward money was "proximately caused" by the theft of the jewelry and thus covered. *See id.* at 948. ("It is an established rule of insurance law that where a peril specifically insured against sets other causes in motion which, in an unbroken sequence and connection between the act and final loss, produces the result for which recovery is sought, the insured peril is regarded as the proximate cause of the entire loss."). The Court concluded "[i]t is our opinion that in this case the payment by plaintiffs of a reward for recovery of their jewelry was a natural and direct consequence of the theft of the jewelry and followed naturally, although indirectly, from that act under the facts of this case and

---

[1] The Chatelains alternatively argue that they could recover for lost milk production as a consequential damage under the Policy, because there is no limitation on or disclaimer of consequential damages in the Policy. Response [179] at 11. I do not address this argument because I conclude lost milk production is covered as a direct loss.

6 – OPINION AND ORDER

in the absence of evidence to the contrary." *Id.* at 948–49; *see also Goodyear Rubber & Supply, Inc. v. Great Am. Ins. Co.*, 545 F.2d 95, 96 (9th Cir. 1976) (applying Oregon law and concluding that an fire insurance policy covered the cost of a salvage operation after a fire).

Following the *Gowans* court's analysis to decide whether the Policy covers lost milk production as a direct loss, I must decide first whether the Policy covers the value of not only the cows, but other losses stemming from the stolen cows. The Policy here states: "'[w]e' insure covered property against loss caused by the following perils," including "theft." Thenell Decl. [175], Ex. 6 at 38–39. Like in *Gowans*, here it is unclear whether the Policy narrowly limits recovery to the value of the stolen property, i.e. cows, or includes other losses resulting from the theft of the cows. Because the provision is ambiguous, I therefore resolve this doubt in favor of the Chatelains and conclude that the Policy covers other losses resulting from the theft of the cows. *See Gowans*, 489 P.2d at 948.

Next, to decide whether lost milk production is covered as an additional loss resulting from the theft, I must decide whether the cattle theft proximately caused the lost milk production. *See id.* at 948. Here, like the payment of reward money in *Gowans*, the lost milk production was a "natural and direct consequence" of the cattle theft: the cow theft directly led to the lost milk production. *See id.* Because the lost milk production is covered as a direct loss under the Policy, I DENY Country Mutual's renewed Motion on these grounds.

### D. *Whether the damages awarded for lost milk production were excessive*

Country Mutual also argues that the jury's award of $400,000 for lost milk production is not supported by the evidence and results in a windfall for the Chatelains, because the Chatelains replaced some of the missing cattle as soon as they retook possession of the farm. Motion [174] at 10–12. But the Chatelains put forth evidence that their farm could hold up to 600 cows and that the newly purchased cows were not "replacement" cows. Transcript [160] at 199, 255. Mr.

7 – OPINION AND ORDER

Chatelain testified that the new cows were purchased with the intent "to increase cash flow," not to replace the missing cows. Transcript [160] at 199. This constitutes sufficient evidence for a jury to conclude that the Chatelains would have purchased the 81 additional cows even if their other cows were not missing, and that there was lost milk production from the 113 missing cows. I DENY Country Mutual's renewed Motion on these grounds.

## II.   Motion for a new trial

### A.   *Whether the Chatelains' demonstrative chart warrants a new trial*

Country Mutual moves for a new trial on the basis that the Chatelains showed a demonstrative chart to the jury during Mrs. Chatelain's testimony that contained an inaccurate damages calculation. Motion [174] at 13–14; Thenell Decl. [175], Ex. 2. The chart listed a value of $303,400 for the missing cattle (the amount the jury awarded) and included the Chatelains' expert as one of its sources. Thenell Decl. [175], Ex. 2. But the Chatelains' expert testified the missing cattle were worth a total of $280,800, and Country Mutual argues there was no other evidence in the record that the missing milk cows were worth $1,800 each. Motion [174] at 13 (citing Trial Transcript at 335). The Chatelains argue that: (1) Country Mutual did not object at trial and has therefore waived the objection; (2) the chart likely did not influence the jury, as it was not offered into evidence and the jury was given a limiting instruction about how to treat charts and summaries; and (3) the demonstrative chart conforms to the Chatelains' valuation of the cattle herd. Response [179] at 14–16.

The Chatelains' arguments are persuasive. Country Mutual did not object to the demonstrative chart at the time. Whether the demonstrative is considered as part of Mrs. Chatelain's testimony or as evidence, Country Mutual's failure to contemporaneously object constitutes waiver of the objection. *See* Fed. R. Evid. 103(a)(1); *United States v. Rivera*, 43 F.3d

1291, 1295 (9th Cir. 1995) (addressing objections to testimony and holding that "[f]ailure to make a timely objection constitutes a waiver of that objection.").

But even if Country Mutual had objected, the demonstrative chart, although its list of sources was vague, did not present incorrect information to the jury. The $303,400 calculation was based on prices of $1,800 for each milk cow and $1,000 for each heifer. The sources listed for the $303,400 calculation were: "Lease (Ex. 3); Plaintiff's expert Mike Gamroth; purchases from Gary Petty (Ex. 21) and Jack Daniel Farm (Ex. 20)." Thenell Decl. [175], Ex. 2. Mr. Gamroth testified that the heifers were worth $1,000 and the milk cows were worth $1,600. Transcript [160] at 335. And the Chatelains purchased replacement cows from Gary Petty for a bundled price of $150,000 for 81 cows and 3 heifers, which equals $1785.71 per animal. But if the heifers only cost $1000 each, the Chatelains paid $1814.81 for each cow. Transcript [160] at 260–61. Combining these sources could generate a total value of $303,400.

Finally, even if there was error, it was harmless. "[C]harts or summaries of testimony or documents already admitted into evidence are merely pedagogical devices, and are not evidence themselves." *United States v. Wood*, 943 F.2d 1048, 1053 (9th Cir. 1991). And there was other evidence in the record from which the jury could have calculated a $1,800/cow formula. At trial, the Chatelains valued the missing milk cows at $1,800 each, which comports with the chart. *See* Langfitt Decl. [180], Ex. 1, Trial Transcript at 13. "Opinion testimony by lay witnesses is admissible if it is '(a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue,'" *United States v. Goodheim*, 686 F.2d 776, 779 (9th Cir. 1982) (quoting Fed. R. Evid. 701), and other courts have held that lay witness opinion testimony is admissible to prove damages. *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir. 1993) (concluding the district court did not abuse its discretion

by allowing lay opinion testimony as to damages, where it was based on knowledge of business); *U.S. ex rel. Technica, LLC v. Carolina Cas. Ins. Co.*, No. 08-CV-01673-H KSC, 2012 WL 1229885, at *5 (S.D. Cal. Apr. 12, 2012). I conclude that Country Mutual's objection to the demonstrative chart is not a sufficient basis for a new trial and DENY Country Mutual's Motion on these grounds.

### B. *Whether the vandalism damages awarded warrant a new trial*

Country Mutual moves for a new trial on the basis that the Chatelains did not prove the damages to the main house were the result of vandalism covered by the Policy. Motion [174] at 14–16. The Policy covers property loss caused by "Vandalism And Malicious Mischief," which is defined as "willful and malicious damage to or destruction of property." Thenell Decl. [175], Ex. 6. at 32. The jury instructions defined malicious as "the intention or desire to harm another." Jury Instructions [149], Instruction No. 22. Country Mutual argues the Chatelains did not show the damage to the heat pump, hardwood floors, built-in hutch, carpets, and countertops were intentional and/or malicious. Motion [174] at 14–16. The Chatelains argue there was significant direct and circumstantial evidence to show that the damage to all of these items was intentional.

The Chatelains offered the following evidence regarding damage to the items discussed by Country Mutual in its Motion:

- Heat pump: The heat pump was purchased because there was damage to the furnace and the pellet stove was missing. Transcript [162] at 690–92. Mrs. Chatelain testified about the pellet stove and furnace, stating "[t]hey had done something because it caused black smoke in the bedrooms at the heat registers. . . . The firebox itself had huge crack in it, and a firebox is super thick, so I don't know what they did." Transcript [162] at 691–92. She also testified that the furnace and pellet stove would have been present and working when she visited the house in March 2013. Transcript [162] at 692.

- Hardwood floors: Mrs. Chatelain testified they were damaged with "animal stains and gouges." Transcript [162] at 693. The jury was also shown photos of the damage. Transcript [161] at 553. She testified that the damage was not present in March 2013.

Transcript [161] at 647–49. Repairman Ronald Olson also testified about the gouges and stains that damaged the floors. Transcript [160] at 326–27.

- Built-in hutch: Mrs. Chatelain testified that the hutch has been "ripped out." Transcript [162] at 695. The jury was also shown photos of the damage. Transcript [161] at 552. She testified that the damage was not present in March 2013. Transcript [161] at 647–49. Mr. Chatelain also testified about the damage to the hutch. Transcript [160] at 93.

- Carpets: Mrs. Chatelain testified the carpets had "[a]nimal feces, animal urine, cow manure" on them. Transcript [162] at 696. The jury was also shown photos of the damage. Transcript [162] at 696. She testified that the damage was not present in March 2013. Transcript [161] at 647–49. Mr. Chatelain also testified about the damage to the carpet. Transcript [160] at 93.

- Countertops: Mrs. Chatelain testified that the countertops had tile missing and had to be redone. Transcript [162] at 697. Mr. Chatelain also testified about the damage to the countertops. Transcript [160] at 134.

In a case involving an insurance policy with similar language, the Oregon Supreme Court held that "property has been damaged 'willfully and maliciously' if the damage results from an intentional act from which damage manifestly would or could result." *Hatley v. Truck Ins. Exch.*, 494 P.2d 426, 431, *adhered to on reh'g*, 495 P.2d 1196 (Or. 1972). The court concluded there was coverage for vandalism where there was evidence that "[s]ome time during the night or early morning, unknown persons not only turned on the water full force, but also moved the hose near the building" because "[t]he likelihood of some damage was great enough to bring the case within the policy coverage." 494 P.2d at 432.

Here, the Chatelains proffered evidence, as discussed above, that the Brauns damaged items in the farmhouse sometime between March 2013 and December 2013, when the Brauns lost their lease. *See* Transcript [160] at 93, 134, 326–27; Transcript [161] at 552–53, 647–49; Transcript [162] at 690–97. They also presented evidence showing that the likelihood of damage was great enough to constitute vandalism under the Policy. Finally, the jury could conclude from

the evidence presented and the nature of the damage that the Brauns acted intentionally. The jury's verdict was sufficiently supported by the evidence. I therefore DENY Country Mutual's Motion on these grounds.

## III.     Remittitur

Alternatively, Country Mutual asks the Court to order remittitur and reduce the awarded damages for lost milk production, missing cattle, and vandalism. Motion [174] at 15–17.

As discussed above, I conclude the jury had sufficient evidence to award the damages it did for lost milk production, the missing cattle, and vandalism. For the reasons stated above, I DENY Country Mutual's Motion for remittitur.

## CONCLUSION

For the reasons stated above, I DENY Country Mutual's Renewed Motion for Judgment as a Matter of Law or in the Alternative, Motion for New Trial [174].


IT IS SO ORDERED.
DATED this 15th day of December, 2017.

MICHAEL W. MOSMAN
Chief United States District Judge