IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**ROBERT CHATELAIN** and
**JANET CHATELAIN**,

        Plaintiffs,

    v.

**COUNTRY MUTUAL
INSURANCE CO.**

        Defendant.

No. 3:15-cv-02013-MO

OPINION AND ORDER

**MOSMAN, J.,**

This matter comes before me on Plaintiffs Robert and Janet Chatelain's Motion for

Attorney Fees [166]. For the reasons stated below, I GRANT in part and DENY in part the

Motion.

## BACKGROUND

Plaintiffs Robert and Janet Chatelain own a dairy farm in Tillamook County. In 2009,

they decided to retire and began leasing the farm to the Brauns. At the time of the lease, the dairy

farm had 230 milking cows, 166 heifers, two bulls, and all equipment necessary to operate a

dairy. In November 2013, the Brauns violated their lease agreement, and in December 2013, the

Chatelains moved back to the dairy farm. On December 20, 2013, their first time milking the

cows since moving back to the farm, the Chatelains noticed that 113 milking cows and 100

heifers were missing from the livestock. They also noticed that several pieces of equipment were

missing and that substantial damage had been caused to the farm. The Chatelains notified the

sheriff, sued the Brauns, and submitted an insurance claim to Country Mutual. Country Mutual denied the claim, and the Chatelains brought suit for breach of contract and breach of the implied duty of good faith and fair dealing.

After a four-day jury trial, the jury found for the Chatelains on both counts and awarded them $793,375.00 in damages from stolen personal property, stolen livestock, loss of milk production, damages to structures, and vandalism. [152].

The Chatelains seek: (1) an award of prejudgment interest in the amount of $178,448.74, through entry of judgment; (2) $816,096.00 in attorney fees and a 2.0 multiplier; (3) $29,021.00 in attorney fees and $5,872.50 in expert fees incurred to prepare the attorney fees motion; and (4) $15,460.96 in costs, including $1,008.90 in costs incurred after the filing of the attorney fees motion.

## DISCUSSION

### I.    Prejudgment Interest

The Chatelains seeks an award of prejudgment interest in the amount of $178,448.74. Motion [166] at 3. Country Mutual does not dispute that the Chatelains are entitled to prejudgment interest but disagrees with the Chatelains about the date prejudgment interest began to accrue. Response [183] at 2–3.

Oregon Revised Statute Section 82.010, which governs prejudgment interest in this case, allows for prejudgment interest at a rate of "nine percent per annum [that] is payable on [a]ll moneys after they become due." O.R.S. § 82.010(1); *see Laro Lumber Co. v. Patrick*, 630 P.2d 400, 404 (Or. Ct. App. 1981) (concluding plaintiff was entitled to prejudgment interest from the date money was due under a contract). "Prejudgment interest is proper when the exact amount owing is ascertained or easily ascertainable by simple computation or by reference to generally recognized standards and where the time from which interest must run can be ascertained."

*Gerber v. O'Donnell*, 724 P.2d 916, 918 (Or. Ct. App. 1986). "Oregon courts [have] adopted an approach where prejudgment interest is appropriate notwithstanding that a defendant disputed liability and the jury did not award plaintiff all the damages it sought or where 'damages are not ascertainable until issues of fact have been decided by the jury.'" *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1258 (D. Or. 2013) (quoting *Strader v. Grange Mut. Ins. Co.*, 39 P.3d 903, 909 (Or. Ct. App. 2002)).

The Chatelains argue that prejudgment interest began to accrue on the date they submitted a proof of loss to Country Mutual, or September 29, 2014. Motion [166] at 4. There is some support in case law for the Chatelains' position that interest should be calculated from the date that damages became ascertainable here, when they submitted the proof of loss. At least one other court applying similar law concluded prejudgment interest begins accruing when proof of loss is submitted. *See Underwriters Subscribing to Lloyd's Ins. Cert. No. 80520 v. Magi, Inc.*, 790 F. Supp. 1043, 1057 (E.D. Wash. 1991) (applying similar Washington law and concluding prevailing party was entitled "to prejudgment interest from the date the proof of loss was submitted"); *see also Mayer v. Bassett*, 501 P.2d 782, 789 (Or. 1972) ("[T]he plaintiff is entitled to recover interest from the date of demand."). But these cases do not address whether the relevant contracts included "due" dates, which might more specifically address when money "become[s] due."

Country Mutual argues that the due date was six months after the Chatelains submitted their proof of loss, based on an Oregon statute on attorney fees in insurance cases. Response [183] at 3. However, Country Mutual does not provide any cases in support of its proposition that the statute on attorney fees also governs prejudgment interest. In the alternative, Country Mutual argues that prejudgment interest did not begin to accrue until the date of the verdict,

because "there was no clarity as to the amount of damages" until trial. Response [183] at 3. But this argument does not comport with *Strader* and other Oregon decisions which hold that "although there are questions of fact about the amounts owed, that does not mean that defendant did not owe sums certain at dates certain." *Strader*, 39 P.3d at 909 (quoting *Hazelwood Water Dist. v. First Union Mgmt.*, 715 P.2d 498 (Or. Ct. App. 1986)).

I do not find either party's position persuasive. I conclude that payment in this case was due sixty days after the Chatelains submitted their proof of loss, or on November 28, 2014. The language of O.R.S. § 82.010 states that prejudgment interest runs from the date any "moneys . . . become due." O.R.S. § 82.010(1). The Policy in this case states that:

> Payment will be made 60 days after "we" receive "your" properly executed proof of loss and "you" have complied with all the policy conditions, and:
>    1. "We" reach an agreement with "you";
>    2. There is an entry of a final judgment; or
>    3. There is a filing of an appraisal award with "us."

Policy [25-1] at 47. The language of this provision could mean either that payment was due 60 days after the proof of loss was submitted or that payment was not due in this case until 60 days after an agreement, the entry of final judgment or the filing of an appraisal award. Because this language is ambiguous, I construe it in favor of the Chatelains and hold they are entitled to recover prejudgment interest beginning 60 days after they submitted the proof of loss. *See Gowans v. Nw. Pac. Indem. Co.*, 489 P.2d 947, 948 (Or. 1971) ("[I]f the terms of an insurance policy are ambiguous, any reasonable doubt as to the meaning of such terms will be resolved against the insurance company and in favor of the insured.").

I therefore calculate prejudgment interest from November 28, 2014, until entry of judgment on August 29, 2017, and grant prejudgment interest in the amount of $171,340.13.

## II.  Attorney Fees

### A. *Entitlement to attorney fees*

Oregon law governs whether attorney fees are available in this case. *Northon v. Rule*, 637 F.3d 937, 938 (9th Cir. 2011) ("State laws awarding attorneys' fees are generally considered to be substantive laws under the Erie doctrine . . . ."). The parties do not dispute that the Chatelains are entitled to attorney fees under O.R.S. § 742.061. Under O.R.S. § 742.061, the Court "shall" award attorney fees if: (1) the Chatelains submitted proof of loss; (2) Country Mutual did not settle within six months of the proof of loss; (3) the Chatelains filed a lawsuit; and (4) the Chatelains' recovery "exceeds the amount of any tender made by the defendant in such action." O.R.S. § 742.061(1). Here, the Chatelains meet each of these criteria: they submitted proof of loss on September 29, 2014; Country Mutual did not settle within six months; the Chatelains filed a lawsuit; and Country Mutual never offered more than $150,000 to settle, but the Chatelains recovered $793,375 at trial.

### B. *Amount of fees*

Oregon courts generally award attorney fees based on the lodestar method, under which courts multiply the reasonable number of hours spent on the case by a reasonable hourly rate. *See* O.R.S. § 20.107(2); *Strawn v. Farmers Ins. Co. of Or.*, 297 P.3d 439, 447–48 (Or. 2013). The lodestar may be adjusted based on the factors specified in O.R.S. § 20.075. *Alexander Mfg., Inc. Emp. Stock Ownership & Tr. v. Ill. Union Ins. Co.*, 688 F. Supp. 2d 1170, 1181 (D. Or. 2010). O.R.S. § 20.075 requires courts to undertake a two-part inquiry when assessing the amount of attorney fees to be awarded in a case such as this one where attorney fees are required by statute. O.R.S. § 20.075. First, the Court must consider:

(a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.

(b) The objective reasonableness of the claims and defenses asserted by the parties.

(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under O.R.S. 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

O.R.S. § 20.075(1). Second, the Court must consider:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

O.R.S. § 20.075(2).

The Chatelains seek $816,096 in attorney fees,[1] a 2.0 multiplier, and $29,021.00 in "fees

on fees." Reply [191] at 10. This total includes a voluntary 30% reduction in hours by the

---

[1] The Chatelains originally asked in the Motion for $816,900 in fees, but revised that number downward by $804.00 in the Reply. Reply [191] at 10.

Chatelains' counsel. Martinson Decl. [168] ¶ 22. Defendants argue the Court should reduce the requested award because the hourly rates for the Chatelains' counsel are excessive, the record shows duplicative and redundant billing, and Country Mutual's conduct was appropriate in this case. Response [183] at 4–15.

### 1. Subsection (1) factors

The Chatelains argue that the applicable factors of subsection (1) weigh in favor of granting their requested attorney fees. In particular, the Chatelains argue the conduct of Country Mutual and its attorneys under factors (a), (b), (d), (e), and (f) weighs in their favor. The Chatelains argue Country Mutual acted unreasonably prior to litigation because Country Mutual did not perform a thorough investigation and failed to respond to the Chatelains' inquiries. Motion [166] at 7. As to litigation conduct, the Chatelains single out the conduct of Country Mutual's counsel and fault Country Mutual for choosing to continue with trial even after the Court granted summary judgment on the conversion defense, for failing to comply with discovery requirements, and for refusing to engage in substantial settlement negotiations. Motion [166] at 7–12. Country Mutual argues it appropriately investigated the Chatelains' claim, the conduct of its attorney is not relevant, and that the Chatelains also committed discovery and settlement violations. Response [183] at 5–9.

I find the majority of the allegedly bad conduct of Country Mutual and its attorneys was aggressive but not unreasonable.

### 2. Subsection (2) factors

The three main factors at issue here are the contingent or fixed nature of fees, the submitted hours, and the requested hourly rates. That the Chatelains received the damages they asked for at trial is also relevant. The other factors do not affect my analysis.

### a) Subsection (h): whether the fee of the attorney is fixed or contingent.

The Chatelains initially retained counsel pursuant to an hourly fee agreement, but the

Chatelains entered into a contingency agreement in fall 2015. Motion [166] at 14. The Chatelains

argue that this was an undesirable and risky case. Motion [166] at 14. Country Mutual argues the

risk in this case was low. Response [183] at 9. In *Precision Seed Cleaners*, this Court concluded

that "while Plaintiff took the case on a contingency basis, once six months passed without a

settlement offer of any kind from Defendant, Plaintiff knew that if it settled for any amount

whatsoever, it would be entitled to attorney fees under O.R.S. 742.061, reducing the impact of

the contingent nature of the case." *Precision Seed Cleaners*, 976 F. Supp. 2d 1 at 1243. I

similarly conclude this factor does not weigh in either party's favor.

### b) Subsection (a): the time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

The Chatelains argue this case should have been "fairly straightforward" but was instead

made unnecessarily expensive by Country Mutual's conduct. Motion [166] at 12. The

Chatelains submitted 2064.30 hours[2] of work by six attorneys and one paralegal at Miller Nash

Graham & Dunn ("MNG&D") prior to the attorney fee petition, and 86.1 hours spent on the

attorney fee petition. Motion [166] at 12. This total incorporates a 30% reduction of hours.

Motion [166] at 12. In the Reply, the Chatelains further revised the numbers of hours requested

downwards, by 2.9 hours, and I therefore deduct 2.9 hours from the original amount requested.[3]

---

[2] The Chatelains say the total hours equal 2061.3 hours, but all hours requested add up to 2064.3. *See* Martinson Decl. [168], Ex. 1 at 54.

[3] The Chatelains state they are only subtracting $804.00 from the total, but the supporting documentation calculates they concede 2.9 hours, or $1004.00.

8 – OPINION AND ORDER

Country Mutual argues the Chatelains incurred excessive and duplicative fees. Response [183] at 11–15. Country Mutual objects to 599.2 hours, arguing the Chatelains billed for intra-office conferences, overbilled for certain tasks, billed for unsupported hours, and billed for administrative tasks.[4] Response [183] at 11–15; Thenell Decl. [184].

### i. Intra-office communications

Country Mutual objects to 46.3 hours billed for intra-office conferences. "A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent." *Ash Grove Cement Co. v. Liberty Mut. Ins. Co.*, No. 3:09-CV-00239-HZ, 2014 WL 837389, at *5 (D. Or. Mar. 3, 2014), *aff'd*, 649 F. App'x 585 (9th Cir. 2016) (citations omitted). "Generally, when attorneys hold a telephone or personal conference, good 'billing judgment' mandates that only one attorney should bill that conference to the client, not both attorneys." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1252 (citation and internal quotation marks omitted); *see also Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 949 (9th Cir. 2007) (upholding district court's finding under federal law that intra-office conferences were "unnecessary and duplicative"). Some courts have strictly applied this rule, concluding that "in general, two attorneys cannot bill for communicating with each other, as such time is duplicative and unnecessary." *Tarango v. City of Bakersfield*, No. 1:16-CV-0099-JLT, 2017 WL 5564917, at *11 (E.D. Cal. Nov. 20, 2017) (applying federal and California law).

Country Mutual objects to hours that are double-billed and/or where attorneys billed for different amounts of time for the same meetings. I agree with Country Mutual, and I therefore deduct 17.8 hours[5] for double-billed meetings from the submitted hours of all attorneys and

---

[4] Country Mutual states it objects to 595.9 hours in its Response, but the total hours equal 599.2 hours.

[5] Some of the hours that Country Mutual objects to were not charged by MNG&D, and I do not deduct for those hours.

staff, but keep the hours of the attorney at the meeting with the highest hourly rate. *See Precision Seed Cleaners*, 976 F. Supp. 2d at 1252.

## ii. **Duplicative, redundant, vague, or excessive hours**

Country Mutual objects to 318.4 hours billed for duplicative or excessive work. After reviewing the record, I find two of Country Mutual's objections meritorious. Country Mutual objects to hours billed for the presence of MNG&D attorney Jésus Palomares at depositions on June 22, 2016, because he did not participate in the depositions. The Chatelains state that Mr. Palomares was "necessary" to the depositions but not that he participated. Martinson Decl. [192], Ex. 1 at 4. I therefore deduct seven hours for this deposition. Additionally, Country Mutual objects to 30 hours spent on a 10-page motion to compel. After reviewing the record, I agree this time is excessive and deduct 10 hours. I do not otherwise deduct hours based on this objection, in particular because the Chatelains already deducted 30% of the hours their counsel spent on this case to avoid charging for duplicative or excessive time.

Country Mutual objects to an additional 142.5 hours as vague, ambiguous, and/or because they are block billed. Thenell Decl. [183] at 2. After reviewing the records submitted by the Chatelains, I conclude these entries are acceptably specific. Even if they were not, the Chatelains submitted additional information about these entries in their Reply and supporting documentation. Martinson Decl. [192]. I therefore deduct no time based on this objection.

In summary, I deduct 17 hours for duplicative or excessive time.

## iii. **Unsupported time**

Country Mutual objects to 26.5 hours that it argues are not supported by billing entries. Response [183] at 14. The Chatelains admit that they inadvertently left off information supporting their fee request on several pages in the original attachment, but attach the correct

spreadsheet to their Reply. *See, e.g.*, Martinson Decl. [168] at 3; Martinson Decl. [192], Ex. 3. I therefore do not deduct any time based on this objection.

### iv.  Administrative tasks

Country Mutual objects to 19.4 hours billed for clerical tasks. "Tasks which are clerical in nature are not properly billed as attorney fees but are overhead expenses absorbed by counsel." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1251. "Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Sterling Sav. Bank v. Sequoia Crossing, LLC*, No. 03:09–cv–00555–AC, 2010 WL 3210855, at *7 (D. Or. Aug. 11, 2010). The Chatelains agreed to deduct 1.8 hours as administrative, which I include in the 2.9 hours I deduct based on their concessions. I deduct 8.1 additional hours for administrative tasks, which includes time spent scheduling, organizing files, and formatting.

### v.  Other issues prior to the fee petition

Country Mutual objects to 0.3 hours billed on June 10, 2016, because the Chatelains labeled these hours "no charge." Thenell Decl. [183] at 3–4. The Chatelains agree to deduct the "no charge" time.  Martinson Decl. [192], Ex. 1 at 6. Country Mutual also objects to 2.9 hours billed after the summary judgment motion was filed, because the billing entry states "Continue to review and revise summary judgment motion." Thenell Decl. [183] at 3–4. The Chatelains state that the 2.9 hours should have been labeled "revise opposition to Country Mutual's summary judgment motion," and I accept this explanation. Martinson Decl. [192], Ex. 1 at 6. I therefore deduct only the 0.3 hours conceded by the Chatelains, which I include in the 2.9 hours I deduct based on their concessions.

11 – OPINION AND ORDER

#### vi.    Fees on fees

Country Mutual objects to 42.9 hours spent on the fee petition, including 35.3 hours that

Country Mutual argues were excessive or duplicative. After reviewing the Chatelains' records, I

do not find that the time spent was excessive, but I do deduct 8.4 hours as administrative.

Country Mutual also argues that 7.6 hours spent on the spreadsheet of costs were unnecessary.

The Chatelains failed to attached the costs spreadsheet to their Motion, but attach it to the Reply.

I accept this explanation and do not deduct any time based on this objection.

In summary, I deduct 2.9 hours as conceded by the Chatelains, 17.8 hours for double-

billed hours, 17 hours as duplicative or excessive, and 8.1 hours for administrative tasks, for a

total of 45.8 hours deducted prior to the attorney fee petition. I also deduct 8.4 hours from the

hours worked on the attorney fee petition. This leaves 2018.5 hours prior to the attorney fee

petition and 77.7 hours spent on the attorney fee petition.

### c)   Subsections (c) and (g): the fee customarily charged in the locality for similar legal services and the experience, reputation and ability of the attorney performing the services.

"As a benchmark for comparing an attorney's billing rate with the fee customarily

charged in the locality, this Court uses the most recent Oregon State Bar (OSB) Economic

Survey." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1244. "If the rate requested exceeds the

average rate reported in the OSB Survey, the burden is on the prevailing party to justify that

higher rate. Even when such justification is present, the court usually limits the hourly rate to the

75th percentile of the OSB Survey." *Prison Legal News v. Umatilla Cty.*, No. 2:12-CV-01101-

SU, 2013 WL 2156471, at *4 (D. Or. May 16, 2013) (citation omitted).

The Chatelains seek the following hourly rates for their attorneys and legal staff:

| Name | Position | Standard Hourly Rate for 2015 | Standard Hourly Rate for 2016 | Standard Hourly Rate for 2017 |
|---|---|---|---|---|
| Stacey A. Martinson | Attorney | $370 | $390 | $410 |
| Frank V. Langfitt | Attorney | N/A | $500 | $520 |
| Eliza J. Dozono | Attorney | $390 | $410 | $425 |
| Jesús Miguel Palomares | Attorney | $290 | $310 | $330 |
| Vanessa L. Triplett | Attorney | N/A | $260 | $280 |
| Lisa Peterson | Paralegal | $210 | $215 | $220 |

Martinson Decl. [168], ¶ 21.[6] The Chatelains argue the hourly rates of their attorneys are reasonable. Motion [166] at 7. Country Mutual objects to the requested rates for each of these timekeepers. Response [183] at 4–5. I address each of these requested rates and Country Mutual's objections below.

### a. Stacey A. Martinson

Ms. Martinson is a partner at MNG&D and has ten years of experience practicing law. Martinson Decl. [168] ¶ 2. She has prior experience in the insurance field and specializes in insurance coverage. Martinson Decl. [168] ¶¶ 2, 3. Her standard hourly rates were $370 in 2015, $390 in 2016, and $410 in 2017. In support of this hourly rate, the Chatelains submit an affidavit from Ms. Martinson and an expert declaration. The Chatelains' attorney fees expert, James T. McDermott, submits that Ms. Martinson's requested hourly rates are reasonable based on her experience and skill. McDermott Decl. [170] at 5. Country Mutual argues Ms. Martinson's hourly rates are excessive and should be reduced to $350. Response [183] at 5.

I find a rate of $350/hour for Ms. Martinson's work in this case to be reasonable. The 2012 OSB Survey lists an average hourly rate of $258 for attorneys in the Portland area with 7–9

---

[6] The Chatelains listed an hourly rate for Teresa H. Pearson in the Motion [166], but do not request fees for any hours worked by Ms. Pearson.

years of experience and $280 for attorneys with 10–12 years of experience. OSB 2012 Economic Survey, https://www.osbar.org/_docs/resources/econsurveys/12economicsurvey.pdf. Ms. Martinson's requested hourly rates for 2015 and 2016 exceed the 95th percentile ($375/hour) for attorneys with similar experience as she had at the time, and her requested hourly rate for 2017 exceeds the 75th percentile ($300/hour) for attorneys in Portland with similar experience. *Id.*; *see Prison Legal News*, 2013 WL 2156471, at *4 (stating this court usually limits rates to the 75th percentile of the OSB Survey, even where justified). Although ta$350 hourly rate also exceeds the 75th percentile for attorneys in Portland with similar experience, Ms. Martinson has significant experience in insurance coverage. I therefore adopt Country Mutual's suggestion and find a $350 hourly rate to be reasonable for Ms. Martinson's work in this case.

### b. Frank V. Langfitt

Mr. Langfitt is a partner at MNG&D and has forty-four years of experience practicing law, with significant experience in the insurance coverage field. Langfitt Decl. [167] at 2–3. Mr. Langfitt's hourly rates were $500 in 2016 and $520 in 2017. Langfitt Decl. [167] at 3. The Chatelains' expert submits that Mr. Langfitt's requested hourly rates are reasonable based on his experience and skill. McDermott Decl. [170] at 4. Country Mutual argues Mr. Langfitt's hourly rates are excessive and should be reduced to $350. Response [183] at 5.

I find a rate of $450/hour to be a reasonable hourly rate for Mr. Langfitt. His requested rates of $500/hour and $520/hour meet or exceed the 95th percentile of rates for attorneys with similar experience. *See* OSB 2012 Economic Survey. But Country Mutual's suggested rate is too low. Although $450/hour exceeds the 75th percentile ($400) of rates for attorneys with similar experience, Mr. Langfitt has significant experience litigating insurance disputes. I therefore find a $450 hourly rate to be reasonable for Mr. Langfitt's work in this case.

14 – OPINION AND ORDER

### c. Eliza J. Dozono

Ms. Dozono is a partner at MNG&D and has eleven years of experience practicing law. Langfitt Decl. [167] at 10. She specializes in business litigation and government relations and filled in as second chair at trial after Ms. Martinson unexpectedly fell ill. Langfitt Decl. [167] at 10. Ms. Dozono's standard hourly rates were $390/hour in 2015, $410/hour in 2016, and $425/hour in 2017. Martinson Decl. [168] ¶ 17. The Chatelains' expert submits that Ms. Dozono's requested hourly rates are reasonable based on her experience and skill. McDermott Decl. [170] at 5–6. Country Mutual argues Ms. Dozono's hourly rates are excessive and should be reduced to $210/hour. Response [183] at 5.

I find an hourly rate of $350 to be reasonable for Ms. Dozono. The 2012 OSB Survey lists an average salary of $258 for attorneys in the Portland area with 7-9 years experience, and $280 for attorneys with 10-12 years of experience. OSB 2012 Economic Survey. Ms. Dozono's requested rates exceed the 75th percentile of hourly rates for attorneys with 10–12 years of experience. *See id.* I therefore adopt Country Mutual's suggestion and find a $350 hourly rate to be reasonable for Ms. Dozono's work in this case.

### d. Jesús Miguel Palomares

Mr. Palomares is an associate at MNG&D and has six years of experience practicing law. Langfitt Decl. [167] at 10. Although his primary field is bankruptcy law, he came to this case with preexisting knowledge because he worked with the Chatelains on the Brauns' bankruptcy case. Langfitt Decl. [167] at 10. His standard hourly rates were $290 in 2015, $310 in 2016, and $330 in 2017. Martinson Decl. [168] ¶ 17. The Chatelains' expert submits that Mr. Palomares's requested hourly rates are reasonable based on his experience and skill. McDermott Decl. [170]

at 6–7. Country Mutual argues Mr. Palomares's hourly rates are excessive and should be reduced to $210/hour. Response [183] at 5.

Mr. Palomares's requested rates exceed the 75th percentile ($250/hour) of hourly rates for attorneys with 4–6 years of experience. *See* OSB 2012 Economic Survey. I find the $250/hour for an attorney with his experience and prior knowledge of the case to be a reasonable hourly rate for Mr. Palomares.

### e. Vanessa L. Triplett

Ms. Triplett is an associate at MNG&D and has two years of experience practicing law. Langfitt Decl. [167] at 11. Her standard hourly rates were $260 in 2016 and $280 in 2017. Martinson Decl. [168] ¶ 17. The Chatelains' expert submits that Ms. Triplett's requested hourly rates are reasonable based on her experience and skill. McDermott Decl. [170] at 6–7. Country Mutual argues Ms. Triplett's hourly rates are excessive and should be reduced to $200/hour. Response [183] at 5.

The average hourly rate for an attorney with 0–3 years of experience in Portland is $182, according to the 2012 OSB Survey. OSB 2012 Economic Survey. I therefore adopt Country Mutual's suggestion and find a $200 hourly rate to be reasonable for Ms. Triplett's work in this case.

### f. Lisa Peterson

Ms. Peterson is a paralegal at MNG&D with over 20 years of experience. Langfitt Decl. [167] at 11. Her standard hourly rates were $210 in 2015, $215 in 2016, and $220 in 2017. Martinson Decl. [168] ¶ 17. The Chatelains' expert submits that Ms. Peterson's requested hourly rates are reasonable based on her experience and skill. McDermott Decl. [170] at 6–7. Country

Mutual argues Ms. Peterson's hourly rates are excessive and should be reduced to $150/hour. Response [183] at 5.

"Although the OSB Economic Surveys contain no information regarding paralegal billing rates, Judges in this District have noted that a reasonable hourly rate for a paralegal should not exceed that of a first year associate." *Precision Seed Cleaners*, 976 F. Supp. 2d at 1248. The average hourly rate for an attorney with 0-3 years of experience in Portland is $182, according to the 2012 OSB Survey. OSB 2012 Economic Survey. I conclude that $180/hour is a reasonable rate for a paralegal with Ms. Peterson's experience.

### 3. Expert fees

The Chatelains request $5,872.50 for the work of their attorney fee expert. Martinson Decl. [192] at ¶ 10. Oregon law allows "fees for services provided in conjunction with the recovery of the underlying fees," including expert fees. *Emerald People's Util. Dist. v. Pacificorp*, 801 P.2d 141, 143 (Or. 1990); see *VanValkenburg v. Or. Dep't of Corr.*, No. 3:14-cv-00916-MO, 2017 WL 532950, at *23 (D. Or., June 9, 2017) (allowing expert fees in conjunction with a "fees on fees" petition). However, I do not find the request of $5,872.50 to be reasonable, considering Mr. McDermott stated he expected to charge the Chatelains "$4,000–$5,000" in fees and charged a high rate of $675/hour. McDermott Decl. [170] at 3; Martinson Dec. [192] at 3. I therefore grant the Chatelains' request for expert fees in the amount of $4,000.

In sum, I grant $682,613 in fees prior to the filing of the attorney fees motion, $22,125 in fees on fees, and $4,000 in expert fees.

### 4. The Chatelains' request for a multiplier

The Chatelains request a 2.0 multiplier, based on the "nature of the case and the conduct of [Country Mutual] and its attorneys." Motion [166] at 15. "Oregon law permits an

enhancement of fees when it is supported by the facts and circumstances of the case." *Beck v. Metro. Prop. & Cas. Ins. Co.*, No. 3:13-CV-00879-AC, 2016 WL 4978411, at *22 (D. Or. Sept. 16, 2016). An enhanced fee award may be appropriate where the recovery was an "exceptional success," and other favorable factors exist, including "the difficulty and complexity of the issues involved in this case, the value of the interests at stake, as well as the skill and professional standing of lawyers involved." *Strunk v. Pub. Emps. Ret. Bd.*, 169 P.3d 1242, 1254 (Or. 2007). The Chatelains argue for a multiplier based on the conduct of Country Mutual and its attorneys. As discussed above, I think Country Mutual's conduct was generally permissible, and I do not grant a multiplier in this case.

**III.    Costs**

28 U.S.C. § 1920 allows federal courts to award costs for filing and docketing, "transcripts necessarily obtained for use in the case," witnesses, and copies. 28 U.S.C. § 1920. 28 U.S.C. § 1821 dictates how witnesses may be paid. 28 U.S.C. § 1821. Federal Rule of Civil Procedure 54(d)(1) "creates a presumption in favor of awarding costs to the prevailing party." *Beck*, 2016 WL 4978411, at *24 (D. Or. Sept. 16, 2016) (citing *Ass'n of Mexican-Am. Educators v. California*, 231 F.3d 572, 591 (9th Cir. 2000) (en banc)).

The Chatelains seek $15,460.96 in costs for the filing fee, service and delivery fees, deposition transcripts, transcripts of court proceedings, witness fees, travel expenses, printing and copying costs, legal research, and delivery charges. Motion [166] at 15; [267-11, 267-12, 269]. Costs are allowed for each of these categories. *See* 28 U.S.C. § 1920 (filing fees, necessary transcripts, witness fees, and copies); 28 U.S.C. § 1821(b) ("A witness shall be paid an attendance fee of $40 per day for each day's attendance."); 28 U.S.C. § 1821(c)(2) (providing for a "travel allowance equal to the mileage allowance" paid to federal employees for witnesses);

*Schmitt v. VAG Group, Inc.*, No. 03:09–cv–00380–HU, 2010 WL 3732980, at \*6 (D. Or. Aug. 12, 2010) (describing legal research fees as costs).

Country Mutual objects to $1,532.45 in costs, including costs incurred to obtain transcripts of depositions. Response [183] at 15. "Deposition costs are taxable if they are reasonably necessary for trial." *Evanow v. M/V Neptune*, 163 F.3d 1108, 1118 (9th Cir. 1998). "A deposition need not be absolutely indispensable to justify an award of costs; rather, it must only be reasonably necessary at the time it was taken, without regard to later developments that may eventually render the deposition unneeded at the time of trial or summary disposition." *Frederick v. City of Portland*, 162 F.R.D. 139, 143 (D. Or. 1995). Here, Country Mutual objects to costs for the deposition transcripts of: (1) Janine Soper; (2) Mark Wustenberg; and (3) Heather Taksdal. Thenell Decl. [184] at 38. Although neither party argues in detail about why these costs should or should not be allowed, each of these depositions were "reasonably necessary" for trial or dispositive motions. The Chatelains originally planned to have each of these witnesses testify at trial, and used their deposition transcripts during trial preparation to understand milk production and Country Mutual's underwriting practices. Witness Statements [57] at 30–32; Martinson Decl. [192] at 6–7. I therefore allow the Chatelains costs for the deposition transcripts.

Country Mutual also objects to trial witness fees for Heather Taksdal and Mark Wustenberg, two witnesses who were summoned but ultimately did not testify at trial. Response [183] at 15. "Although courts do not ordinarily award a witness fee for a witness who does not testify at trial, a court may award such fees if the witness is ready to testify, but extrinsic circumstances rendered the testimony unnecessary." *Harrington v. City of Portland*, No. CIV. 87-516-FR, 1990 WL 177406, at \*3 (D. Or. Nov. 8, 1990). Courts have allowed fees for non-testifying witnesses where "a good faith determination was made, presumably in order to avoid

19 – OPINION AND ORDER

delay, unnecessary inconvenience to the Court and parties, and other substantial expenses incident to prolonging the trial, that they need not be used because their testimony would only have been repetitious and cumulative of a case already sufficiently proved." *Quy v. Air Am., Inc.*, 667 F.2d 1059, 1064–65 (D.C. Cir. 1981) (quoting *United States v. Lynd*, 334 F.2d 13, 16 (5th Cir. 1964)). Here, it appears the Chatelains made a good faith determination not to call these two witnesses due to time constraints. I allow the Chatelains costs for these trial witness fees.

After reviewing the documents submitted by the Chatelains, I conclude they have sufficiently accounted for most costs, with one exception. The Chatelains seek reimbursement for $145.00 in copying costs to create a "foam-core trial exhibit," but do not explain this cost or which document was copied. "Copying costs for documents produced to opposing parties in discovery, submitted to the court for consideration of motions, and used as exhibits at trial are recoverable. . . . A party's conclusory assertion that all copies were reasonably necessary to its case is, by itself, insufficient." *Beck,* 2016 WL 4978411, at \*26. Without more explanation, I cannot deduce whether the costs for this exhibit are appropriate. *See, e.g., Hunt v. City of Portland,* No. CV 08-802-AC, 2011 WL 3555772, at \*12 (D. Or. Aug. 11, 2011) ("This court has declined to award costs for enlarged exhibits that were merely large versions of standard-size exhibits previously admitted into evidence at trial."). I therefore deduct $145.00 from the costs bill.

In summary, I grant the Chatelains $15,315.96 in costs.

/ / /

/ / /

/ / /

/ / /

## IV. Conclusion

For the reasons stated above, I GRANT in part and DENY in part the Chatelains' Motion for Attorney Fees [166]. I grant $171,340.13 in prejudgment interest, $682,613 in attorney fees prior to the petition, $22,125 in attorney fees incurred to file the petition, $4,000 in expert fees, and $15,315.96 in costs, as shown in Appendix A to this opinion.

IT IS SO ORDERED.

DATED this 29 day of December, 2017.

MICHAEL W. MOSMAN
Chief United States District Judge

**Appendix A: Final Calculation of All Fees and Costs**

|                      | Requested       | Awarded      |
|----------------------|-----------------|--------------|
| Prejudgment interest | $178,448.74     | $171,340.13  |
| Attorney Fees        | $816,096.00     | $682,613.00  |
| *Multiplier*         | *x 2*           | None         |
| Fees on fees         | $29,021         | $22,125.00   |
| Cost Bill            | $15,460.96      | $15,315.96   |
| Attorney fee experts | $5,872.50       | $4,000       |
| **Total**            | $1,860,995.20   | **$895,394.09** |

| Main Fee Petition | | | | | | |
|---|---|---|---|---|---|---|
| *Name* | *Position* | *Rate* | *Hours requested* | *Total deductions* | *Final hours* | *Total* |
| Stacey A. Martinson | Attorney | $350 | 452.3 | 10.8 | 441.5 | $154,525.00 |
| Frank V. Langfitt | Attorney | $450 | 800.5 | 6 | 794.5 | $357,525.00 |
| Eliza J. Dozono | Attorney | $350 | 95.4 | 0 | 95.4 | $33,390.00 |
| Jesús Miguel Palomares | Attorney | $250 | 132 | 7.7 | 124.3 | $31,075.00 |
| Vanessa L. Triplett | Attorney | $200 | 250.9 | 11.2 | 239.7 | $47,940.00 |
| Lisa | Paralegal | $180 | 333.2 | 10.1 | 323.1 | $58,158.00 |
| | | | | | **Total** | $682,613.00 |

| Fees on Fees | | | | | | |
|---|---|---|---|---|---|---|
| *Name* | *Position* | *Rate* | *Hours requested* | *Total deductions* | *Final hours* | *Total* |
| Stacey A. Martinson | Attorney | $350 | 23.6 | 0 | 23.6 | $8,260.00 |
| Frank V. Langfitt | Attorney | $450 | 12.9 | 0 | 12.9 | $5,805.00 |
| Vanessa L. Triplett | Attorney | $200 | 32.2 | 0 | 32.2 | $6,440.00 |
| Lisa Peterson | Paralegal | $180 | 17.4 | 8.4 | 9 | $1,620.00 |
| | | | | | **Total** | $22,125.00 |